UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lamar Jabbar McGill,<br><br>           Plaintiff,<br><br>v.<br><br>Officer Skeels,<br><br>           Defendant. | Case No. 2:24-cv-01973-BHH-MGB<br><br>**REPORT AND RECOMMENDATION** |

Lamar Jabbar McGill ("Plaintiff"), a state detainee proceeding *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights against Officer Skeels ("Defendant") of the Charleston Police Department. (Dkt. No. 1 at 4.) Under Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review this case and submit findings and recommendations to the assigned United States District Judge. For the reasons discussed below, the undersigned recommends that this action be summarily dismissed.

## BACKGROUND

The Complaint states that on March 15, 2024, at 1:54 a.m., Plaintiff drove into a Circle K parking lot in a white Qx80 Infiniti, which had been "rented from Kelly's Auto Sales days prior . . . by a third party." (Dkt. No. 1 at 6.) Plaintiff notes that the "borrowed vehicle was known to officers through investigation to be involved in the distribution of narcotics," although Plaintiff claims he was unaware of that fact on the date of March 15, 2024. (*Id.*) Plaintiff contends that an officer[1] saw him exiting the car and called "for assistance from the Charleston County Sheriff's Office" because Plaintiff was "an African American" driving a "high end luxury vehicle." (*Id.*) Plaintiff went inside the Circle K where he "dropped the keys off to the Qx80 Infiniti" and then went back outside to

---
[1] It is unclear from the Complaint whether this "officer" was Defendant Skeels. Due to the somewhat confused nature of Plaintiff's allegations, it is difficult to piece together the timing/circumstances of the events here.

"await his ride." (*Id.*)

Once outside, Defendant Skeels apparently recognized Plaintiff and "knew him to have an active warrant for distribution." (*Id.*) Thus, Plaintiff was placed under arrest and officers searched his person "for the keys to the vehicle." (*Id.*) Because Defendant Skeels was unable "to locate the keys to the Infiniti Qx80 on the person of [Plaintiff]," he "seized and towed the Infiniti" to the Charleston Police Department "where such vehicle would be searched pursuant to a search warrant." (*Id.*) Plaintiff claims that despite one of the officers at the Circle K observing "in plain view a cigarillo containing a green leafy substance in the center console," the vehicle was not searched until 10:45 a.m. (*Id.*) Plaintiff seems to suggest that during the search of the Infiniti, officers recovered a "green plant-like material," a "white powder substance," a "white rock-like substance," and a "Palmetto State Armory Dagger handgun." (*Id.* at 7.) Plaintiff maintains that none of these items belonged to him, and surmises that Defendant Skeels, or one of the other officers at the scene, "planted" them in the vehicle. (*Id.*)

The Complaint appears to argue that Defendant Skeels violated Plaintiff's "rights to due process by not searching the vehicle on the scene" of the Circle K and "in the presence of [Plaintiff] . . . and numerous officers." (*Id.*) Plaintiff further claims that "[a] search warrant was only secured to search such vehicle due to [his] skin color." (*Id.*) Plaintiff claims that "[f]rom the very first sighting of the white Infiniti, Officer Skeels targeted the vehicle as the vehicle known for distribution. [Plaintiff's] 4th and 14th Amendment rights of equal protection and due process [were] infringed upon as he was targeted by Officer Skeels." (*Id.*) The Complaint seeks $2 million in damages for the resulting "depriv[ation] of [Plaintiff's] liberty." (*Id.* at 8.)

Upon reviewing these allegations, the undersigned issued an order notifying Plaintiff that his action was subject to summary dismissal for failure to state a claim upon which relief may be granted. (Dkt. No. 8 at 1–4.) In light of Plaintiff's *pro se* status, the undersigned then afforded him twenty-

one days, plus three days for mail time, to file an amended pleading that cured the deficiencies identified in the original Complaint. (*Id.* at 4.) The undersigned emphasized that if Plaintiff did not follow these instructions within the time permitted by the order, his case may be summarily dismissed. (*Id.* at 5.)

Despite this warning, Plaintiff failed to submit an amended pleading in compliance with the Court's instructions. Nevertheless, in an abundance of caution, the undersigned issued a second order affording Plaintiff one final opportunity to submit an amended pleading. (Dkt. No. 10.) The undersigned once again emphasized that failure to comply with these instructions would result in summary dismissal. Unfortunately, Plaintiff never filed an amended complaint and the time to do so has expired. Accordingly, the instant action remains limited to the allegations presented in the original Complaint (Dkt. No. 1), which fail to state a claim upon which relief may be granted.

## LEGAL STANDARD

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit, and is also governed by 28 U.S.C. § 1915A, which requires the court to review a complaint filed by a prisoner that seeks redress from a governmental entity or officer or employee of a governmental entity.

To protect against possible abuses, the court must dismiss any prisoner complaints, or portions of complaints, that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A(b). A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal

theory may be dismissed *sua sponte* "at any time" under § 1915(e)(2)(B). *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989). The United States Supreme Court has explained that the statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id.* at 326.

As to failure to state a claim, a complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Rule 8(a)(2) of the Federal Rules of Civil Procedure. To satisfy this standard, a plaintiff must do more than make conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the court need not accept as true a complaint's legal conclusions). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the complaint fails to state a claim.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is therefore charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure to allege facts that set forth a cognizable claim under Rule 8(a)(2). *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990); *see also Iqbal*, 556 U.S. at 684 (outlining pleading requirements under Rule 8, Fed. R. Civ. P., for "all civil actions"). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those

trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

## **DISCUSSION**

Despite receiving several opportunities to comply with this Court's instructions, Plaintiff has failed to file an amended complaint that cures the deficiencies identified in his initial pleading. As a result, this action remains subject to summary dismissal for the reasons discussed below.

First, Plaintiff primarily seems to be challenging his arrest and the subsequent search of the Infiniti on the grounds that he was racially profiled in violation of the Fourteenth Amendment. The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). To state such a claim, the plaintiff "must show both that 'he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *See Eng. v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). As the undersigned previously explained (Dkt. No. 8 at 2), the facts in the Complaint offer no basis—other than Plaintiff's unsubstantiated opinion—to conclude that police intentionally discriminated against Plaintiff based on race. To the contrary, Plaintiff expressly states that the car he was driving had already been flagged by local law enforcement as being involved in drug activity, that an officer observed "a cigarillo containing a green leafy substance" in the vehicle, and that there was an outstanding warrant for his arrest "for distribution." (Dkt. No. 1 at 6.) These facts undermine any claim that Plaintiff was subject to selective law enforcement on the basis of his race.

Next, to the extent Plaintiff is alleging that his arrest constitutes an unlawful seizure, "[t]he Fourth Amendment is not violated by an arrest based on probable cause." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) ("To establish an unreasonable seizure under the Fourth Amendment, [the plaintiff] needs to show that the officers

5

decided to arrest her . . . without probable cause."). Once again, because the Complaint seems to suggest that Plaintiff was arrested pursuant to an outstanding warrant (Dkt. No. 1 at 6), any allegations of unlawful arrest under the Fourth Amendment fall short of a constitutional violation.[2] *See Anderson v. State Att'y Gen. of S.C.*, No. 0:08-cv-742, 2008 WL 5100801, at *4 (D.S.C. Dec. 2, 2008) (explaining that "a facially valid warrant provides the probable cause necessary to comport with constitutional requirements" for purposes of arrest). Similarly, Plaintiff seems to indicate that the Infiniti was searched pursuant to a warrant and, in fact, even suggests that the police had probable cause to search the vehicle at the Circle K based on the cigarillo. (Dkt. No. 1 at 6–7.) Accordingly, insofar as Plaintiff is challenging the search of the vehicle under the Fourth Amendment, his allegations likewise fail to demonstrate a constitutional violation. *See Porterfield v. Lott*, 156 F.3d 563, 571 (4th Cir. 1998) ("Because the search . . . was effected pursuant to a valid warrant supported by probable cause, the search did not run afoul of [the] Fourth Amendment. . . .").

It is not entirely clear from the face of the Complaint whether Plaintiff was later arrested in relation to the items seized from the Infiniti or whether he is challenging such an arrest here.[3] Assuming, for purposes of this Report and Recommendation only, that Plaintiff is attempting to challenge such an arrest, the only allegation offered in support of this claim appears to be that "Det. Bennett, Det. Mapp or [Defendant] Skeels planted [the drugs and firearm]" in the vehicle. (Dkt. No. 1 at 7.) As the undersigned previously warned Plaintiff (Dkt. No. 8 at 3), a person acting under color of state law can be held liable under § 1983 only if he or she was personally involved in the

---

[2] Plaintiff does not appear to contest the validity or basis of the outstanding arrest warrant.
[3] A cursory search of the Charleston County Public Index indicates that Plaintiff was arrested on March 15, 2024, for a "habitual traffic" offense (Case No. 20240416277237) and distribution of cocaine (Case No. 2024A1010201455). *See* https://jcmsweb.charlestoncounty.org/PublicIndex/?AspxAutoDetectCookieSupport=1 (limiting search to Lamar McGill) (last visited Sept. 6, 2024); *see also Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (explaining that a federal court may take judicial notice of the contents of its own records, as well as those records of other courts). Plaintiff was then charged with a series of additional criminal offenses on March 16, 2024 (*see* Case Nos. 2024A1010201722, -23, -24, -25, -26). While the undersigned assumes that these subsequent charges stem from the vehicle search, the Court cannot make such a determination absent further clarification from Plaintiff.

6

deprivation of the plaintiff's constitutional rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff's bare speculation that one of three officers may have planted the items in the vehicle does not show the requisite personal involvement for purposes of § 1983. *See Twombly*, 550 U.S. at 555, 570 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable").

Moreover, to the extent this subsequent arrest was executed pursuant to a warrant (and Plaintiff is challenging the means used to procure said warrant), Plaintiff's Fourth Amendment claim would likely be one of malicious prosecution,[4] which requires a showing that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("A plaintiff need only show that the criminal prosecution ended without a conviction."). Because Plaintiff's criminal charges from March 2024 are still pending before the Charleston County Court of General Sessions, "any malicious prosecution claim has yet to accrue" and is therefore subject to summary dismissal at this time. *See Tucker v. Price*, No. 4:22-cv-1861-MGL-MHC, 2023 WL 7168684, at *6 (D.S.C. Sept. 21, 2023) (referencing *McDonough v. Smith*, 139 S. Ct. 2149, 2160 (2019) (noting that although the injury caused by a malicious prosecution claim occurs as soon as legal process is brought against a

---

[4] "Allegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are considered a § 1983 malicious prosecution claim." *See Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996)); *see also Tucker v. Price*, No. 4:22-cv-1861-MGL-MHC, 2023 WL 7168684, at *5 (D.S.C. Sept. 21, 2023) (explaining that "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant; rather, at most, that official can be pursued through a cause of action for malicious prosecution" based on "an alleged lack of probable cause for seeking and issuing the warrant in the first instance") (internal citations and quotation marks omitted), *adopted*, 2023 WL 7166244 (D.S.C. Oct. 27, 2023).

defendant, favorable termination remains the accrual date)), *adopted*, 2023 WL 7166244 (D.S.C. Oct. 27, 2023).

Finally, regardless of whether the subsequent arrest was executed pursuant to a warrant, any claims for injunctive relief would be barred by the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 (1971), which precludes this Court from interfering with ongoing state judicial proceedings. *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "What lies behind *Younger* is the premise that state courts are capable of adequately protecting constitutional rights." *Victoria v. Bodiford*, No. 8:21-cv-1836-JMC, 2021 WL 3726707, at *2 (D.S.C. Aug. 20, 2021); *see also Gilliam*, 75 F.3d at 904 (noting that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights") (referencing *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). Thus, federal district courts should abstain from hearing constitutional claims, no matter how meritorious, if they have been or could be presented in an ongoing state action. *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 887 F.2d 49, 52 (4th Cir. 1989); *see also Victoria*, 2021 WL 3726707, at *2. Because Plaintiff presumably has the opportunity to raise his concerns regarding his arrest in the underlying state criminal proceedings, this Court is barred from taking any action that would interfere with the same. (Dkt. No. 8 at 4.)

## CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff's action is subject to summary dismissal for failure to state a claim upon which relief may be granted. The undersigned therefore **RECOMMENDS** that this action be **DISMISSED** without further leave to amend, as Plaintiff has already had an opportunity to do so. *See Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022); *see also Workman v. Morrison Healthcare*, 724 F. App'x. 280, 281 (4th Cir. June 4, 2018).

In light of this recommendation, the Clerk of Court shall not forward this matter to the United States Marshal Service for service of process at this time.

    **IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

September 10, 2024
Charleston, South Carolina

    **The parties' attention is directed to an important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).